IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| Kenneth L.<br><br>              Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL, Commissioner<br>of Social Security,<br><br>              Defendant. | CV 20-70-M-DLC-KLD<br><br><br>FINDINGS AND<br>RECOMMENDATION OF UNITED<br>STATES MAGISTRATE JUDGE |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner" or "Defendant") on his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. (Doc. 1.) On September 16, 2020, Defendant filed the Administrative Record. (Doc. 10.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of Defendant's denial and remand for an award of disability benefits, or alternatively for further administrative proceedings. (Doc. 13.) The motion is fully briefed and ripe for the Court's review. (Docs. 13, 14, 16.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court recommends that the Commissioner's decision be

1

**REVERSED** and this matter be **REMANDED** for further proceedings.

## I.    Procedural Background

Plaintiff protectively filed an application for Title II disability insurance benefits on October 16, 2015, alleging disability since January 3, 2011. (Doc. 10, at 166.) Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Doc. 10, at 70-79, 80-99, 18-32). Plaintiff requested review of the decision, and on March 31, 2020, the Appeals Council denied Plaintiff's request for review. (Doc. 10, at 7-11.) Thereafter, Plaintiff filed the instant action.

## II.   Legal Standards

### A.    Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

2

*Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

## B.    Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

The Commissioner assesses disability through a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch*, 400 F.3d at 679.

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

4

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still perform on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation process.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

/ / /

## III.   **Discussion**

The ALJ followed the five-step sequential evaluation process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2017. The ALJ further found that Plaintiff had not engaged in substantial gainful activity after the alleged onset date of January 3, 2011. (Doc. 10 at 23.)

At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease, lumbar and cervical spine with spondylosis and ankylosis; cardiac arrhythmia; status post VSD repair and repair of coarctation aorta; impaired exercise tolerance; depression; dysthymia; carpal tunnel syndrome; aniridia; reading disorder; anxiety disorder; and pain disorder. (Doc. 10 at 24.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment described in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 10 at 24.)

At step four, the ALJ found that Plaintiff had the residual functional capacity to:

> Perform sedentary work as defined in 20 CFR 404.1567(a). The claimant could never climb ladders/ropes/scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant is limited to no more than frequent use of near and far acuity. He should have no exposure to

unprotected heights, moving mechanical parts, or other workplace hazards. The claimant should have not more than occasional exposure to extreme cold, extreme heat, vibration, or work on rough or uneven surfaces. The claimant is limited to understanding, remembering, and carrying out only simple, routine tasks in a job requiring not more than simple work-related decisions and having no more than occasional changes to the routine work setting and job duties. There could be no high production rate or pace work like you would expect to see on an assembly line, but the claimant could fill a quota as long as they were able to control the pace of that work. The claimant cannot perform jobs requiring reading of smaller than twelve-point font. The claimant needs to alternate positions, for standing and walking, he is limited to twenty minutes at a time and then he would need to sit for five minutes before resuming standing and walking. His sitting would be limited to thirty minutes at a time then the claimant need to stand and stretch at the workstation while remaining on task for one minute and then could resume his seated position.

(Doc. 10 at 25-26.)

Based on this residual functional capacity, the ALJ found that Plaintiff could not perform his past relevant work as a school custodian. (Doc. 10 at 30.) Proceeding to step five, the ALJ found based on the vocational expert's testimony that there were other jobs existing in significant numbers in the national economy that Plaintiff could have performed. (Doc. 10 at 31.) Thus, the ALJ found that Plaintiff was not disabled. (Doc. 10 at 32.)

Plaintiff argues the ALJ erred in the following ways: (1) improperly assessing and rejecting the medical opinion evidence by Plaintiff's treating and examining physicians; (2) failing to properly credit Plaintiff's hearing testimony and his wife's written testimony; and (3) failing to issue an RFC finding that is

7

supported by substantial evidence. (Doc. 13 at 5-6.) The Court addresses each argument in turn.

### A.    Medical Opinion Evidence

The administrative record contains several medical opinions and records relevant to Plaintiff's physical and mental functioning during his alleged period of disability. Plaintiff challenges the ALJ's evaluation of medical source opinions provided by eight treating and examining medical sources. (Doc. 13 at 6.) The Commissioner counters that the ALJ reasonably evaluated the medical opinions and other medical evidence in the record. The Commissioner additionally argues that to the extent the ALJ did not discuss some of the medical evidence, such evidence was not significant or probative.

When evaluating a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician is entitled to the greatest weight. *Lester*, 81 F.3d at 830. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician." *Lester*, 81 F.3d at 830.

Where there are conflicting medical opinions in the record, the ALJ is responsible for resolving that conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it is entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir 2007). If a treating physician's opinion is not entitled to controlling weight, the ALJ considers several factors in determining what weight it will be given. *Orn*, 495 F.3d at 631. Those factors include the "[l]ength of the treatment relationship and the frequency of the examination" and the "[n]ature and extent of the treatment relationship." *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(c)(2)(i)-(ii)). Additional factors relevant to the ALJ's evaluation of any medical opinion, not limited to that of a treating physician, include: (1) the supportability of the opinion; (2) the consistency of the opinion with the record as a whole; (3) the specialization of the treating or examining source; and (4) any other factors that are brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

To discount the uncontroverted opinion of a treating or examining physician, the ALJ must provide clear and convincing reasons for doing so and those reasons must be supported by substantial evidence. *Lester*, 81 F.3d at 830. To discount the

controverted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

As set forth below, the administrative record in this case contains conflicting opinions from treating, examining, and non-examining sources regarding Plaintiff's functioning during the relevant period. Given these conflicting opinions, the ALJ was required to give specific and legitimate reasons for discrediting one opinion in favor of another.

### 1.   Richard Wohns, M.D. and Charlene Alderman, ARNP

Plaintiff argues the ALJ failed to accord appropriate weight to the opinions of Dr. Wohns and his assistant, ARNP Alderman, concerning Plaintiff's back impairments. (Doc. 13 at 7.) Dr. Wohns and ARNP Alderman treated Plaintiff from August 22, 2012 through September 30, 2013. During the treatment period, Dr. Wohns diagnosed Plaintiff with L5-S1 neuroforaminal stenosis and performed an L5-S1 laminectomy on Plaintiff.

Plaintiff established care with Dr. Wohns and ARNP Alderman at NeoSpine

in August 2012 for treatment of his lower back pain. (Doc. 10 at 715.) ARNP Alderman assessed Plaintiff's condition based on an MRI obtained in 2011 and indicated Plaintiff suffered from low back pain, lumbar degenerative disc disease, spinal stenosis, lumbar radiculitis, and sciatica. (Doc. 10 at 715.) ARNP Alderman took an extensive medical history from Plaintiff and under the "social and employment history" heading of her notes, ARNP Alderman noted "unable to work" as Plaintiff's employment status. (Doc. 10 at 718.) ARNP Alderman ordered an updated MRI of Plaintiff's lumbar spine.

As ordered, Plaintiff underwent a lumbar MRI on October 25, 2012. (Doc. 10, at 714.) Plaintiff's MRI findings showed "very mild posterior annular protrusion" at T12-L1, "mild degenerative changes of the endplates anteriorly" and "desiccation and narrowing of the disc" at L1-L2, "solid fusion of the endplates anteriorly" and narrowing of the disc posteriorly at L2-L3, fusion and narrowing of the disc at L3-L4, narrowing of the disc and degenerative irregularities and changes in the endplates at L4-L5, and finally, "mild diffuse posterior disc protrusion" and "moderate to marked bilateral foraminal narrowing" at L5-S1. (Doc. 10 at 713.)

Plaintiff returned to NeoSpine for a follow-up visit with Dr. Wohns on December 6, 2012. (Doc. 10 at 707.) Upon reviewing Plaintiff's condition, Dr.

Wohns determined lumbar spine surgery to be the best option for Plaintiff's back maladies. (Doc. 10 at 707.) Plaintiff underwent a L5-S1 laminoforaminotomy surgery on January 23, 2013. (Doc. 10 at 703.) On February 15, 2013, Plaintiff returned to ARNP Alderman for a post-operative visit. (Doc. 10 at 699.) Plaintiff reported pain in his lower back, left leg, and ankle. He also rated his pain at a 6-7/10. (Doc. 10 at 699.) Plaintiff had a follow up visit with ARNP Alderman on April 24, 2013. (Doc. 10 at 695.) Plaintiff stated that his symptoms had slightly improved, but he continued to have pain in his low back and left leg, and some tingling in his feet. ARNP Alderman noted Plaintiff should continue his physical therapy treatment "to get him back to working status." (Doc. 10 at 695.)

Plaintiff returned to ARNP Alderman for a visit on June 13, 2013. (Doc. 10 at 691.) Plaintiff indicated his symptoms "have slightly improved." (Doc. 10 at 691.) He reported that he continued to have some pain in his back and left leg but rated his pain level at a 5/10. ARNP Alderman examined Plaintiff on August 13, 2013 resulting from Plaintiff's complaints of leg pain. (Doc. 10 at 687.) ARNP Alderman noted Plaintiff had debilitating left leg pain and could not stand for more than ten minutes. (Doc. 10 at 687.) She also noted Plaintiff reported his pain was not improved from massage therapy and his pain level was a 6/10. ARNP Alderman ordered a lumbar MRI. (Doc. 10 at 687.)

Dr. Wohns examined Plaintiff and reviewed the MRI findings in September 2013. The MRI revealed ankylosis at L2-3, L3-4 disc space lumbar kyphosis, moderate disc disease at L1-2, and multilevel facet arthropathy. (Doc. 10 at 685.) Plaintiff complained of pain in his lower back, left calf, and ankle. He rated his pain level at a 4/10. (Doc. 10 at 682.) Thereafter, in October 2013, Plaintiff received two nerve root block treatments. (Doc. 10 at 679-680.)

Plaintiff argues the ALJ wholly failed to mention, let alone accord appropriate weight, to Dr. Wohns' findings and diagnoses. In particular, Plaintiff argues the ALJ failed to account for Dr. Wohns' opinion that Plaintiff was "unable to work". Plaintiff similarly argues the ALJ failed to provide valid and germane reasons for rejecting ARNP Alderman's opinion that Plaintiff was not able to work.

As to Dr. Wohns, the record contains treatment notes from Plaintiff's visits, including the notation of "unable to work" in the "Past Medical History" section of records. (Doc. 10 at 683, 709.) The Commissioner argues this notation reflects Plaintiff's subjective statements provided about his employment history, not a medical opinion from Dr. Wohns. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you

13

can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). It is unclear from the record whether the ALJ considered Dr. Wohns' notation that Plaintiff was unable to work to be an opinion or merely a recitation of Plaintiff's subjective statements. This uncertainty is due to the ALJ's failure to mention Dr. Wohns' treatment of Plaintiff at all. The ALJ, not the Court, is responsible for resolving this disputed ambiguity.

Apart from the "unable to work" notation, the medical records from Plaintiff's time under Dr. Wohns' care indicate Dr. Wohns was significantly involved in Plaintiff's treatment. Dr. Wohns did more than simply examine Plaintiff – he ordered diagnostic testing, evaluated results, determined Plaintiff's best course of action was to undergo surgery, and provided post-operative evaluations. (Doc. 10 at 679-715.) Accordingly, the Court disagrees with the Commissioner's argument that the ALJ appropriately ignored Dr. Wohns' opinions because his treatment records were not significant or probative in determining Plaintiff's functional capacity.

While there is no error where an ALJ does not mention a treating physician's treatment notes if "they do not contain any medical opinions that are significant or probative with respect to the residual functional capacity determination", the Court cannot reasonably consider Dr. Wohns' notes void of significance. *Kelly v. Astrue*,

471 Fed. Appx. 674, 676 (9th Cir. 2012) (citing *Vincent ex rel. Vincent v. Heckler*,

739 F.2d 1389, 1394-95 (9th Cir. 1984) (ALJ need not discuss all evidence in the

record, she must only explain why she rejected significant probative evidence).

This is especially true because Dr. Wohns' treatment concerned Plaintiff's

degenerative disc disease, spondylosis, and ankylosis – all conditions the ALJ

found to be severe. Because Dr. Wohns' statements reflect judgments about the

severity and diagnosis of Plaintiff's back impairments, they constitute opinions the

ALJ should have weighed. Dr. Wohns' insights reasonably link Plaintiff's

symptoms with his ability to work. By making no effort to even mention Dr.

Wohns, the ALJ did not identify what, if any, evidence in the record was

inconsistent with his findings. The ALJ clearly erred by not setting forth "his [or

her] own interpretations and explain[ing] why they, rather than the doctors' are

correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). *See also*

*Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (An ALJ errs if she

"rejects a medical opinion or assigns it little weight while doing nothing more than

ignoring it[.]").

   The ALJ similarly erred by wholly disregarding ARNP Alderman's medical

findings. Pursuant to the regulations applicable to this case, nurse practitioners and

physicians' assistants are not "acceptable medical source[s]" and are instead

considered "other sources." 20 C.F.R. §§404.1527(f)(1); 416.927(f); 416.902.

Other sources cannot give medical opinions but can provide evidence about the

severity of a claimant's impairments and how they affect the claimant's ability to

work. While an ALJ must provide specific and legitimate reasons based on

substantial evidence to discount evidence from an "acceptable medical source,"

evidence from an "other source" is not entitled to the same deference and may be

discounted if the ALJ provides germane reasons for doing so. *Molina v. Astrue*,

674 F.3d 1104, 1111-12 (9th Cir. 2012).

 Here, the ALJ failed to mention ARNP Alderman's opinions on Plaintiff's

physical ability. Accordingly, the ALJ did not provide any germane reasons for

discounting ARNP Alderman's findings. The Commissioner's argument that

ARNP Alderman's treatment of Plaintiff is not significant or probative is

unsupported by the record which shows ARNP Alderman treated Plaintiff multiple

times, ordered objective testing, and provided findings about Plaintiff's functional

limitations consistent with the diagnostic evidence.

 ARNP Alderman's treatment notes specifically link Plaintiff's back and leg

impairments to his occupational abilities. For example, after Plaintiff underwent

back surgery, ARNP Alderman stated in the "plan" section of her treatment notes

that Plaintiff would be "off work" until his next appointment. (Doc. 10 at 699.)

ARNP Alderman additionally stated that Plaintiff had debilitating left leg pain and could not stand for more than ten minutes. (Doc. 10 at 687.) She further noted that Plaintiff should continue his physical therapy treatment "to get him back to working status." (Doc. 10 at 695.) Because these notes appear to be judgments made by ARNP Alderman about Plaintiff's impairments and limitations therefrom, they constitute opinions under the social security regulations. Further, they are no doubt probative to the residual functional capacity analysis. The opinions pertain to Plaintiff's ability to stand for a certain amount of time and his progress towards reaching a physical condition that allows him to work. For these reasons, the Court finds the ALJ erred by not considering ARNP Alderman's findings.

      2.    <u>Bradley Billington, M.D., Anne McCormack, M.D., and Eugene Wong, M.D.</u>

Plaintiff next argues that the ALJ failed to address the opinions of three physicians who assessed Plaintiff in connection with his workers' compensation case. The commissioner counters that the ALJ specifically acknowledged medical evidence related to Plaintiff's workers' compensation claim, but rejected the evidence because it was related to "an entirely different disability program" and did not include "function-by-function assessments as required under the regulations." (Doc. 14 at 12; Doc. 10 at 28-29.)

Dr. Billington conducted a medical examination of Plaintiff on March 18,

17

2011 to review his physical ailments resulting from a back injury he sustained while working as a custodian. (Doc. 10 at 654-69.) Dr. Billington reviewed Plaintiff's medical history and performed an orthopedic physical examination. After examining Plaintiff and reviewing diagnostic results, Dr. Billington opined that Plaintiff had a history of chronic back pain and his work-related accident exacerbated his pain. (Doc. 10 at 666.) Finally, Dr. Billington recommended that the Plaintiff not return to custodial work at the present time. (Doc. 10 at 668.)

Dr. McCormack and Dr. Wong evaluated Plaintiff on October 31, 2013 in connection with his work-related back injury. (Doc. 10 at 331.) Drs. McCormack and Wong provided a medical history of Plaintiff's physical condition and conducted an orthopedic and neurologic examination. (Doc. 10 at 354.) They noted Plaintiff likely sustained a lumbar injury at work and suffered from several pre-existing back conditions. (Doc. 10 at 357-58.) They also opined that Plaintiff could continue working so long as his duties were modified to account for his injuries. (Doc. 10 at 361.) All three doctors limited Plaintiff to sitting 3-6 hours per workday and standing/walking 1-4 hours per workday. (Doc. 10 at 361, 670.)

The ALJ did not specifically discuss the evaluations and opinions provided by Drs. Billington, McCormack, and Wong. Rather, the ALJ stated that she "considered the various mentions throughout the record of maximum improvement

and impairment ratings", but because such records were "related to workers' compensation . . . they are not function-by-function assessments as required under the regulations." (Doc. 10 at 28-29.) Accordingly, the ALJ considered the opinions as "subjective statements and weighed them to the degree required under the regulations." (Doc. 10 at 29.)

Contrary to the ALJ's statement that she weighed the workers' compensation records pursuant to the regulations, her decision does not demonstrate that she adequately considered the opinions of Drs. Billington, McCormack, and Wong. The ALJ was required to weigh these physicians' medical opinions, and explain her rejection thereof, "just as she would any other medical opinion." *Booth v. Barnhart*¸181 F.Supp.2d 1099, 1106 (C.D. Cal. 2002) (collecting cases holding that an ALJ is required to evaluate workers' compensation medical reports and opinions in accordance with the Social Security disability regulations). *See also*, Social Security Ruling (SSR) 95-5p, 1996 WL 374183, at *2 (July 2, 1996) (an ALJ is required to "carefully consider medical source opinions about any issue"). The ALJ's condensed rejection of all the workers' compensation records falls short of providing specific and legitimate reasons for rejecting the physicians' opinions. The Court therefore cannot find the ALJ properly weighed the opinions of Drs. Billington, McCormack, and Wong, or

specifically identified a 'legitimate' reason to reject them. *Garrison*, 759 F.3d at 1012 (an ALJ errs when she assigns little weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language[.]").

   3. <u>Sally Lydon, NP</u>

  Plaintiff next argues the ALJ erred in evaluating the opinion of Sally Lydon, a nurse practitioner who treated Plaintiff eleven times for various health concerns. (Doc. 13 at 9.)

  As previously discussed, pursuant to the regulations applicable to Plaintiff's claim, nurse practioners are considered "other sources" who cannot give medical opinons but can provide evidence about the severity of a claimant's impairments and how they affect the claimant's ability to work. 20 C.F.R. § 404.1502; SSR 06-03p. *See also*, 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4). The ALJ may reject the opinion of a nurse practitioner by providing germane reasons for doing so. *Molina*, 674 F.3d at 1111-12. The ALJ should evaluate such opinion evidence pursuant to such factors as how long the source has known the claimant, how long the source has seen the claimant, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, and whether the source has a specialty or area of expertise related to the individual's

impairment. SSR 06-03p.

Plaintiff argues the ALJ did not provide germane reasons for rejecting the opinion of NP Lydon because the ALJ failed to mention or consider her opinion whatsoever. The Commissioner argues the ALJ was not required to discuss NP Lydon's notes because they were not significant or probative of any specific functional limitations.

NP Lydon began treating Plaintiff on March 1, 2016. (Doc. 10 at 400.) During Plaintiff's initial visit, NP Lydon documented Plaintiff's social history in her treatment notes. NP Lydon listed Plaintiff's occupation as "disabled" and also noted "[h]e is disabled in relation to back issues." (Doc. 10 at 401.) Plaintiff visited NP Lydon multiple times about various health concerns through June 2017, including back pain and depression. However, it appears Plaintiff chiefly visited NP Lydon regarding cardiac problems. For example, on April 11, 2017, Plaintiff requested a physician's letter to help him get SNAP benefits. (Doc. 10 at 918.) NP Lydon wrote a note in support of Plaintiff's qualification for benefits, stating that Plaintiff "has been unable to obtain gainful employment from June 2016 to present due to persistent and chronic cardiac dysfunction.' (Doc. 10 at 917.) She also stated that Plaintiff had chronic low back pain that she had yet to assess. (Doc. 10 at 917.)

NP Lydon continued to evaluate and treat Plaintiff for his various health concerns. On March 31, 2017 and April 18, 2017, Plaintiff reported headaches, depression, and pain in his lower back, leg, and foot. (Doc. 10 at 929, 909.) Upon examination, NP Lydon noted Plaintiff had pain while lying down and increased pain during a leg raise test when she lowered his legs. (Doc. 10 at 911.) However, she also noted that Plaintiff ambulated without difficulty. (Doc. 10 at 911.) On June 14, 2017, NP Lydon noted that Plaintiff reported low back pain interfering with his activities of daily living. NP Lydon ordered a CT Scan of his lumbar spine. (Doc. 10 at 900.)

The Commissioner attributes the ALJ's disregard of NP Lydon's notes and opinions to their lack of significance or probative value. The Commissioner further argues that to the extent NP Lydon's opinions on the Plaintiff's disability status are probative, they are founded on Plaintiff's subjective complaints and the issue of disability is a matter reserved to the Commissioner. The Commissioner therefore argues that the ALJ did not err by failing to mention NP Lydon in her decision.

First, to the extent NP Lydon stated Plaintiff was unable to work due to his impairments, her opinion is reserved to the Commissioner. 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d). Regardless, the ALJ is still required to "carefully consider medical source opinions about any issue, including opinions

22

about issues that are reserved to the Commissioner." Social Security Ruling (SSR) 95-5p, 1996 WL 374183, at *2 (July 2, 1996). Thus, the ALJ was still required to provide germane reasons for rejecting NP Lydon's opinion.

The ALJ did not mention NP Lydon's opinion, let alone weigh it. Additionally, the Court does not agree with the Commissioner that the record indicates NP Lydon's opinion is insignificant and lacks probative value. Most of the medical records from the one-year period NP Lydon treated Plaintiff document the impairments Plaintiff identifies as disabling, including degenerative disc disease, cardiac arrhythmia, and depression. (Doc. 10 at 892-969.) The record also indicates NP Lydon was directly involved in Plaintiff's care, including ordering labs and tests, prescribing medication, and referring Plaintiff to specialists. (Doc. 10 at 402, 404-07.) In overlooking the medical records from NP Lydon, the Court finds that the ALJ failed to appropriately weigh the medical evidence. *See Tommasetti v. Astrue*, 5333 F.3d 1035, 1041 (9th Cir. 2008) (the ALJ is responsible for resolving conflicts and weighing the medical evidence).

### 3.   Philip B. Tate, Ph.D.

Plaintiff next argues that the ALJ failed to provide specific and legitimate reasons for discrediting some of Dr. Tate's opinions. Dr. Tate is a clinical psychologist who conducted a neuropsychological evaluation of Plaintiff on April

24, 2014 and April 28, 2014. (Doc. 10, at 366.) Dr. Tate observed that Plaintiff's level of intellectual function was in the below average to low average range. (Doc 10 at 371.) Dr. Tate also noted that Plaintiff's reading comprehension was average, but his reading speed was "consistent with disability" and opined that "jobs that require significant reading would not be a good choice for [Plaintiff]". (Doc. 10 at 371, 372.) He further noted that Plaintiff's visuospatial constructive abilities showed strength and opined that Plaintiff "is able to work in jobs that involve primarily visuospatial tasks[.]" (Doc. 10 at 371.)

In contrast to Plaintiff's stronger visual skills, Dr. Tate noted Plaintiff "has significant weaknesses in auditory working memory." (Doc. 10 at 371.) He further opined that Plaintiff "likely becomes overwhelmed [by] too much information and stimulation in quick succession, possibly resulting in mistakes or forgetting information necessary to complete all daily work duties." (Doc. 10 at 371.) Due to these issues, as well as Plaintiff's slow mental processing speed, Dr. Tate opined that Plaintiff would "likely do better in a training program/job that is slower paced and allows him adequate time to process information and develop cues and reminders for himself by taking notes or placing sticky notes in key locations to remind him where he is in a task and what he must do to complete it." (Doc. 10 at 371.)

Dr. Tate also found Plaintiff had "limited social judgment and understanding of social conventions." (Doc. 10 at 371.) Dr. Tate therefore opined that Plaintiff "may do better in a job that has limited social contact with others." (Doc. 10 at 371.) Finally, Dr. Tate found Plaintiff suffered from major depression and generalized anxiety, which may exacerbate his intellectual function deficits. (Doc. 10 at 371.)

The ALJ was required to provide specific and legitimate reasons for rejecting Dr. Tate's opinion. The ALJ gave Dr. Tate's opinion significant weight. (Doc. 10 at 28.) The ALJ found Dr. Tate's opinion on Plaintiff's intellectual capacity well supported by examination and testing. However, the ALJ did not find Dr. Tate's opinion of Plaintiff's social functioning consistent with Plaintiff's testimony, reported socialization, and treatment notes describing Plaintiff as cooperative and pleasant. (Doc. 10 at 28.)

Plaintiff first argues the ALJ did not provide any reason for rejecting Dr. Tate's social capacity findings, let alone a specific and legitimate reason. In her decision, however, the ALJ cited the "claimant's testimony and reported socializing in his Functional Report" as well as Plaintiff's "improvement with psychotherapy" and description as "cooperative and pleasant." (Doc. 10 at 28.) In the Functional Report cited by the ALJ, Plaintiff indicated he spends time with

others. (Doc. 10 at 230.) Plaintiff elaborated that he spends time with his fiancé every day and talks to his friends every few weeks. He also stated that he texts and goes on Facebook. (Doc. 10 at 230.) Finally, Plaintiff stated that he sometimes attends church, visits a coffee shop almost every day "to get out and maybe talk or at least see people", and sometimes goes to dinner or a movie. (Doc. 10 at 230.) As pointed out by the Commissioner, a conflict between a medical opinion and "a claimant's activity level is a specific and legitimate reason for rejecting the opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (finding ALJ reasonably discounted treating physician's opinion concerning claimant's ability to sit and stand for no more than five minutes where claimant previously worked six to eight hour shifts and was required to sit and stand for long periods of time).

The ALJ also cites Plaintiff's improvement with psychotherapy in rejecting Dr. Tate's social capacity opinion. Although the ALJ did not cite to specific treatment notes showing Plaintiff's improvements, there are various treatment notes reflecting Plaintiff's cooperative demeanor. For instance, in 2017 Dr. Balouch examined Plaintiff and found that Plaintiff's "[v]erbal content is appropriate . . . [m]emory, concentration, and general fund of knowledge are intact . . . [i]nsight and judgment are intact." (Doc. 10 at 567.) Also in 2017, clinical psychologist Dr. Mozer examined Plaintiff and found him to be "somewhat low-

26

energy, but certainly not unpleasant." (Doc. 10 at 593.) Dr. Mozer further opined that Plaintiff could "interact adequately with others and get along, but he may be somewhat ill-equipped to deal with interpersonal conflict." (Doc. 10 at 593.) These notes are consistent with the ALJ's finding that Dr. Tate's opinion of Plaintiff's social functioning was inconsistent with other evidence in the record. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommassetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Accordingly, the Court finds the ALJ provided specific and legitimate reasons for discounting Dr. Tate's opinion, which are supported by substantial evidence in the record.

Plaintiff next argues that the ALJ failed to provide specific and legitimate reasons for discrediting Dr. Tate's opinion that Plaintiff required a visual presentation of his work duties, a slow paced job with accommodations for Plaintiff to take notes or place sticky notes as reminders, and a job that did not require significant reading. (Doc. 13 at 12.) The Court disagrees and finds that the ALJ appropriately gave these aspects of Dr. Tate's opinion significant weight. The ALJ specifically adopted Dr. Tate's opinion that Plaintiff would perform better "in jobs relying upon visual memory rather than auditory memory . . . would become overwhelmed by too much information and stimulation and have trouble

remembering lengthy and detailed oral instructions . . . and would do better with slower paced work." (Doc. 10 at 28.) Moreover, contrary to Plaintiff's assertions, Dr. Tate did not opine that Plaintiff required specific accommodations to work. Rather, Dr. Tate opined as to Plaintiff's vocational strengths and weaknesses, including what environments and factors would best fit Plaintiff's abilities. (Doc. 10 at 371.) To the extent Plaintiff challenges whether the ALJ properly incorporated Dr. Tate's opinion into the RFC, the Court will discuss Plaintiff's arguments in evaluating the ALJ's RFC finding.

### 4.   Joseph Boyle, M.D.

Plaintiff next contends the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Dr. Joseph Boyle. In May 2018, Dr. Boyle completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) form. (Doc. 10 at 602.) Dr. Boyle indicated that Plaintiff had marked limitations in understanding and remembering simple instructions, carrying out simple instructions, understanding and remembering complex instructions, carrying out complex instructions, and making judgments on complex work-related decisions. (Doc. 10 at 602.) Dr. Boyle explained that his opinion was based on Plaintiff's "severe difficulty concentrating, thought blocking, depressed mood, low energy, low motivation, [and] learning disorder." (Doc. 10 at 602.)

Dr. Boyle also opined that Plaintiff's impairments would moderately affect his ability to interact appropriately with supervisors and co-workers. (Doc. 10 at 603.) He further opined that Plaintiff's limitations would have a marked impact on his ability to appropriately respond to usual work situations and changes in a routine work setting. (Doc. 10 at 603.) Dr. Boyle cited "severe difficulty concentrating, social anxiety, depressed mood, low energy, [and] low motivation" as support for his findings in these areas. (Doc. 10 at 603.) Finally, Dr. Boyle stated these impairments affected Plaintiff's physical movement, including Plaintiff's ability to stand for more than fifteen minutes and walk without difficulty. (Doc. 10 at 603.) In support of his opinion, Dr. Boyle cited Plaintiff's history of suffering a back injury and Plaintiff's reported dysfunction, which Dr. Boyle stated was confirmed by the medical record. (Doc. 10 at 603.)

The ALJ gave limited weight to Dr. Boyle's opinion. The ALJ noted that unlike Dr. Tate's opinion, Dr. Boyle's was not supported by specific signs and testing. (Doc. 10 at 30.) The ALJ also found Dr. Boyle's opinion inconsistent with Plaintiff's reports that he was able to drive alone and shop. (Doc. 10 at 30.) An ALJ may properly discount a physician's opinion when it is inconsistent with another supported examination in the record, and the ALJ sufficiently explains the reasons for rejecting the opinion. *Garrison*, 759 F.3d at 1012 ("Where an ALJ does

29

not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."). Here, the Court finds the provided specific and legitimate reasons for providing more credit to Dr. Tate's opinion than Dr. Boyle's.

First, the ALJ found Dr. Boyle's opinion to be less thorough than Dr. Tate's. The Court finds that the ALJ reasonably cited Dr. Tate's neuropsychological evaluation as the basis for limiting the weight she gave to Dr. Boyle's opinion. As stated, Dr. Tate's opinion was based on a two-day evaluation consisting of objective testing and observations. (Doc. 10 at 366.) His opinion consists of several pages of findings and analysis. In comparison, Dr. Boyle's Medical Source Statement is brief and does not cite to specific medical testing or evaluation. In fact, the Court finds no other medical evidence in the record authored or ordered by Dr. Boyle to support his opinion. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

The ALJ also rejected Dr. Boyle's opinion because it was contradicted by Plaintiff's reported activity level. (Doc. 10 at 30.) There is substantial evidence in the record to support the ALJ's conclusion. For example, Dr. Boyle opined that

Plaintiff had such severe difficulty concentrating that he had a substantial loss in the ability to effectively understand and remember simple instructions and carry out simple instructions. (Doc. 10 at 602.) However, Plaintiff reported he drives almost every day, refuting Dr. Boyle's severe concentration finding. (Doc. 10 at 50.) A conflict between a medical opinion "and a claimant's activity level is a specific and legitimate reason for rejecting the opinion." *Ford*, 950 F.3d at 1155.

### B.    The ALJ's Evaluation of Lay Witness Evidence

Plaintiff next argues that the ALJ improperly assessed and rejected the written testimony provided by his wife, Bridget Lambert. An "ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*¸ 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003)). The ALJ may discredit the testimony of a lay witness if she "expressly determines to disregard such testimony and gives reasons germane . . . for doing so." *Lewis v. Apfel*, 236 F.3d 503, 510-11 (9th Cir. 2011).

The ALJ considered Bridget Lambert's testimony and afforded it partial weight because Ms. Lambert "is not a trained medical expert" and "may color her statements based on a variety of unknown factors." (Doc. 10 at 30.) The ALJ additionally stated that "while the report was helpful, she will defer to the objective medical evidence and acceptable medical source opinion evidence[.]" (Doc. 10 at

30.) Neither of these reasons are proper grounds for discrediting lay witness testimony.

First, lay witness testimony is not introduced to provide a medical opinion and an ALJ cannot reject lay witness testimony because the witness is not medically trained. *See Dodrill*, 12 F.3d at 918-19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his] condition."). Lay witness testimony offers a perspective on a claimant's condition and how it affects his ability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1116 & n. 1 (9th Cir. 2009) ("A lay person, Bruce's wife, though not a vocational or medical expert, was not disqualified from rendering an opinion as to how her husband's condition affects his ability to perform basic work activities.").

Second, an ALJ may not reject testimony from a family member merely because the lay witness has a close relationship to the claimant. *Valentine v. Commissioner*, 574 F.3d 685, 694 (9th Cir. 2009) (improper for an ALJ to reject claimant's wife's testimony because she was an "interested party" who might be sympathetic to claimant). For these reasons the Court finds the ALJ erred by not providing a germane reason for discounting the testimony of Bridget Lambert.

/ / /

/ / /

## C.     The ALJ's Credibility Determination

Plaintiff argues the ALJ's credibility determination was erroneous because the ALJ failed to provide sufficiently clear and convincing reasons for discounting his subjective testimony as to the severity of his limitations. (Doc. 13 at 15-20.)

The credibility of a claimant's subjective symptom testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Vasquez*, 572 F.3d at 591. If the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms only by providing "specific, clear and convincing reasons" for doing so. *Vasquez*, 572 F.3d at 591.

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-*

*Hunter*, 806 F.3d 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)).

In addition, the court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 492. This means the court "may not take a general finding" by the ALJ "and comb the administrative record to find specific" evidence in support of that finding. *Brown-Hunter*, 806 F.3d at 494. Rather, the ALJ is responsible for identifying the testimony she finds not credible, and linking that testimony to the particular parts of the record supporting her determination. *Brown-Hunter,* 806 F.3d at 494.

Here, the first step of the credibility analysis is not in issue. The ALJ properly determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, and there is no argument the Plaintiff is malingering. (Doc. 10 at 27.) Therefore, the ALJ was required to cite specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of his symptoms.

The ALJ began by briefly summarizing the Plaintiff's statements about his symptoms and abilities as reported at the hearing and in disability and function reports. (Doc. 10 at 26.) The ALJ then concluded that the "medical evidence does not support the claimant's statements." (Doc. 10 at 27.) The ALJ noted that the

objective medical record "revealed severe radiological findings that were tempered by a normal gait and negative straight leg raise testing." (Doc. 10 at 28.) The ALJ also noted that the Plaintiff "had normal muscle strength and mild carpal tunnel syndrome signs[,] . . . reduced cognitive abilities, [but] maintained the ability to follow written instructions and perform simple routine tasks." (Doc. 10 at 28.)

In focusing on notes documenting Plaintiff's "normal gait and negative straight leg raise testing", the ALJ overlooked the various medical records documenting Plaintiff's ongoing back issues. Perplexingly, in the paragraphs prior to reaching the decision that the medical record did not support the Plaintiff's statements, the ALJ cited extensive medical evidence documenting Plaintiff's severe chronic back impairments. (Doc. 10 at 27.) Further, the medical records relied on by the ALJ detailing Plaintiff's negative straight leg raise testing include Plaintiff's report of pain during the testing. For example, the ALJ cited the orthopedic examination by Dr. McCormack as contradictory to Plaintiff's testimony. But the examination by Dr. McCormack states that Plaintiff reported pain during both his seated and supine straight leg raise tests. (Doc. 10 at 356.) Plaintiff also reported pain during a straight leg raise performed by NP Lydon. (Doc. 10 at 11.) Treatment records must be viewed in light of the overall diagnostic record. *Ghanim v. Colvin*¸763 F.3d 1154, 1164 (9th Cir. 2014).

The ALJ also failed to identify which of Plaintiff's statements she found to be inconsistent with the medical evidence. The ALJ concluded that the Plaintiff's "statements about the intensity, persistence, and limiting effects of his or her symptoms . . . are inconsistent because the claimant's medical evidence does not support the claimant's statements." (Doc. 10 at 27.) The ALJ went on to summarize the medical record but did not explain which statements the record undermined. First, summarizing the medical record "is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Brown-Hunter*, 806 F.3d at 494. Second, the ALJ's vague allegations of inconsistencies between Plaintiff's statements and the objective medical evidence, without any "specific finding in support of that conclusion, is insufficient." *Treichler v. Commissioner*, 775 F.3d 1090, 1103 (9th Cir. 2014) (internal citation omitted). The ALJ must do more than simply point to portions of the record that she finds undermine Plaintiff's testimony; she must also identify the testimony she finds not credible and link that testimony the record. *Brown-Hunter,* 806 F.3d at 494.

The only other reason the ALJ provided for discounting Plaintiff's testimony was based on his reported activities. (Doc. 10 at 28.) An ALJ may discount a claimant's subjective testimony based on the claimant's reported activities if those

activities contradict the claimant's testimony or are transferable work skills. *Orn*, 495 F.3d at 639. Here, the ALJ noted that although the Plaintiff reported "significant reduction in activities of daily living," he also reported being able to drive, complete some chores, and shop several times per week. (Doc. 10 at 28.)

The Court fails to see how these activities are inconsistent with Plaintiff's testimony. Plaintiff testified that he was able to do these activities within limits and on a restricted basis. (Doc. 10 at 51-52, 233.) For example, Plaintiff stated he could only do chores "in sections" because of his pain, experienced pain while driving, and could only grocery shop every few days for a "half hour or two", or when his back prevented him from continuing to shop. (Doc. 10 at 52, 233, 229.) "Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Finally, the ALJ did not find Plaintiff's reported activities constituted transferable work skills. For these reasons, the Court concludes that the ALJ's credibility finding is not properly supported by specific, clear and convincing reasons.

### D.    The ALJ's RFC Finding and Hypothetical Questions Posed to the Vocational Expert

Plaintiff argues the ALJ failed to issue an RFC finding that accurately reflects the opinions of Plaintiff's treating and examining medical providers.

Specifically, Plaintiff contends that the ALJ failed to accurately include limitations articulated by Dr. Tate, expressed by Plaintiff and his wife, and related to Plaintiff's carpal tunnel syndrome and chronic migraines. (Doc. 13 at 23-25.)

Having determined that remand is warranted based on the ALJ's failure to adequately consider the medical evidence and testimony from Plaintiff and Bridget Lambert, the Court finds these errors may have affected the RFC finding and the hypothetical the ALJ relied upon. For example, the ALJ found Plaintiff could stand for twenty minutes at a time, but ARNP Alderman indicated Plaintiff could not stand for more than ten minutes. (Doc. 10 at 687.) Additionally, as Plaintiff points out, Drs. Billington, McCormack, and Wong all found Plaintiff limited to sitting 3-6 hours per workday and standing/walking 1-4 hours per workday. (Doc. 10 at 361, 670.) Yet, the ALJ did not consider these opinions when determining that Plaintiff could perform sedentary work. On remand, the ALJ should properly weigh the medical evidence and consider the testimony provided. The ALJ should consider what, if any, additional limitations are properly incorporated into the RFC assessment to account for Plaintiff's impairments, and elicit additional vocational expert testimony as necessary. "The testimony of a vocational expert is valuable only to the extent it is supported by medical evidence." *Magallanes*, 881 F.2d at 756.

Next, to the extent Plaintiff argues the ALJ's RFC finding must account for his carpal tunnel syndrome and chronic migraines simply because they were identified as severe impairments at step two, he is incorrect. The RFC "must set out *all* the limitations and restrictions of the particular claimant." *Valentine*, 574 F.3d at 690 (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). However, the ALJ's identification of severe impairments at step two "is not meant to identify impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). The RFC is meant to incorporate an individual's limitations and restrictions, regardless of whether they result from a severe or non-severe impairment. *Buck*, 869 F.3d at 1049 (finding of additional severe impairments does not necessitate revised RFC).

The ALJ explained her decision not to incorporate limitations from Plaintiff's carpal tunnel syndrome into the RFC finding. The ALJ stated that Plaintiff "had normal muscle strength and mild carpal tunnel syndrome signs." (Doc. 10 at 28.) The ALJ supported her finding with objective evidence in the record, specifically an electromyography test "that revealed very mild right median mononeuropathy at the wrist, otherwise a normal study." (Doc. 10 at 28, 1105.) Accordingly, the Court finds the ALJ did not err by failing to include limitations or restrictions from Plaintiff's carpal tunnel syndrome in the RFC finding.

Regarding Plaintiff's chronic migraines, the Court finds the ALJ did not properly account for, or otherwise explain her rejection of, limitations produced by Plaintiff's migraines. (Doc. 10 at 25-26.) Although the RFC includes limitations that could arguably be related to Plaintiff's migraines, the ALJ did not link any of the limitations to Plaintiff's migraines. For example, the RFC limits Plaintiff to simple, routine tasks, and reading in a font size of at least twelve-point. However, those limitations appear to stem from Plaintiff's cognitive deficits and aniridia, not his migraines. (Doc. 10 at 28.)

This issue is material to the RFC finding because the record clearly manifests Plaintiff's frequent, and arguably debilitating, headaches. (e.g., doc. 10 at 605, 627, 726, 745-47, 909, 911, 1130.) And, unlike the ALJ's consideration of Plaintiff's carpal tunnel syndrome, the ALJ does not explain why she failed to incorporate any headache-related limitations into the RFC. The Court therefore cannot determine whether the ALJ's decision not to include limitations for Plaintiff's chronic migraines was based on substantial evidence.

Although the Court has determined the RFC to be inadequate for the reasons discussed, the Court will briefly address Plaintiff's argument that the RFC does not include Dr. Tate's opinions. Plaintiff argues the RFC finding does not include limitations for Plaintiff's contact with others, or for his need to have a job that

40

involves slow paced visual work. (Doc. 13 at 23.). The Court finds the ALJ properly accounted for Dr. Tate's opinions and incorporated these concerns by (1) limiting Plaintiff to "understanding, remembering, and carrying out only simple, routine tasks"; (2) limiting Plaintiff to jobs "requiring not more than simple work related decisions and having no more than occasional changes to the routine work setting and job duties"; and (3) limiting Plaintiff to jobs that do not have a high production rate or pace work, where Plaintiff could control the pace of his work. (Doc. 10 at 25-26.) It is clear the ALJ accommodated Plaintiff's working memory and pace of production limitations by restricting his work environment and job duties.

Additionally, as previously discussed, the Court found the ALJ properly discounted Dr. Tate's opinions regarding Plaintiff's social functioning abilities. The ALJ is tasked with resolving conflicts and ambiguities in the evidence, and the Court may not substitute its judgment for that of the Commissioner when "the evidence is susceptible to more than one rational interpretation." *Edlund*, 253 F.3d at 1156. "It is the responsibility of the ALJ . . . to determine residual functional capacity. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The Court finds the ALJ did not err by declining to incorporate limitations on Plaintiff's contact with others into the RFC finding.

### E.    Remand

The errors discussed above require that this case be remanded. Plaintiff requests the Court remand this matter for an award of benefits, or in the alternative, for further administrative proceedings. The Ninth Circuit has directed district courts to remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

Here, there are outstanding issues to be resolved. On remand, the ALJ should further consider the medical evidence discussed above, as well as the testimony of Bridget Lambert and Plaintiff. The ALJ should clarify what, if any, additional limitations are incorporated into the RFC assessment to account for Plaintiff's impairments. In addition, the Court acknowledges that the ALJ is in the best position to evaluate the medical evidence. Providing the ALJ with the opportunity to reevaluate the medical evidence and offered testimony on remand will remedy the identified defects in the original administrative proceedings.

/ / /

IV.   **Conclusion**

Based on the foregoing, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED** and the Commissioner's decision denying Plaintiff's claims for disability insurance benefits and supplemental security income benefits be **REVERSED**. This matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 10th day of February, 2021.

Kathleen L. DeSoto
United States Magistrate Judge